You may begin when you're ready. Thank you, Your Honor. Good morning, and may it please the Court. I'm Trent Norris of Hogan Levels here representing Joneca, the appellant in this matter. I'd like to reserve three minutes for rebuttal, if that's okay. There are three issues that are presented here, and I'd like to cover all three of them, because we think that the court below committed legal error with respect to all three. The first and central issue is whether literal falsity was shown here in this case. The judge below decided that literal falsity was indeed shown by necessary implication. This is a doctrine that the Ninth Circuit has referred to, but never elaborated on, and so we're writing on something of a clean slate here. Horsepower is the issue in the case, and horsepower is a number presented on the box of a garbage disposal at the point of sale. It's a number that we contend is a rating. It's a rating that is based on the underwriter's laboratory standard, which demonstrates the load of the particular. Wait a minute, that's a jump right there, that it's based on the underwriter's standard. That standard says that it's irrespective of anything that's on the box, so why are you saying it's based on that? Well, you're right, Your Honor, because the standard says you're to determine it regardless of what may have been written on the motor when it was received. So why are you saying it's based on that? Because the test is performed using the underwriter's laboratory. I'm sorry? The test is performed by Jonica using the underwriter's laboratory standard, and it determines the load. Oh, I see. So you're saying that in this particular instance, that's where they got it from. That's exactly right. Or, okay. And indeed, not only Jonica, but the other two competitors in the industry besides Insinkerator. Insinkerator is the one of the four that appears to do it in a different manner. And what the court found in this case was that the meaning of that number, which it doesn't say it means output or input or any such thing or how it's determined on the label of the product, but that the meaning of that is the output that's provided by the garbage disposal to the consumer ultimately. We think it's an ambiguous term because there are many in the industry that use an input standard. Well, if you were buying a car that had, you know, 50 horsepower, presumably the 50 horsepower has to be what's driving the car and not what's going in at some earlier stage before it gets to drive the car. Wouldn't that be, that's one possible interpretation. That's possible. But it may also be that this is the rating. So you would buy a car that said it was 50 horsepower even though in fact 30 of the horsepower are lost before it gets to the motor that's driving the car. Yes, because the 50 horsepower may be stated as a number that relates to something, a unit of the car. But let's talk about blenders, for instance. A blender is nothing more than an upside down garbage disposal, also grinds food. And blenders are sold based on an input number, an input wattage, watts and horsepower are just different measures of power. But blenders are sold in that manner. You make that assertion, is that in your brief? The blender analogy? Yes, and it's in the record. With supporting record facts that the HP designation on blenders pertain to the input? Yes, it's in the record as well. I'll give you the expert. And that's because it's safer to have a lower input number? It's just, it's the convention with respect to blenders. Right, but isn't that the premise behind UL 430? The premise is UL 430 is a safety standard. So therefore you'd want a lower number? Not necessarily, it just, it describes what is the load that... Well like with an AC unit, if it's a higher number you have anxieties about the input power being too big. No, you just have to make sure that the electrical circuit will handle it. Right, that's a safety consideration. I understood the district court to be saying, we're looking at the consumer and whether a reasonable or plausible interpretation would be that HP refers to output. And then to my eye the district court looked at the only record evidence, record evidence, but you're telling me there's other record evidence, which is how is Home Depot shelving them? And they're shelving them as to grinding power, output power. No, they're not, you're shelving them based on horsepower, by the number that's written on the box. Without that number saying whether it's output power or input power. Well you're familiar with the red brief, right? It struck, I thought they gave us on pages nine to ten the various explanations Home Depot gives. They all prefer to grinding power. Right, but horsepower relates to grinding power, but it is not a measure of grinding power. So grinding power also has to be determined by the compartment that it's in, by the RPM of revolution, by the design of the actual unit. The district court's saying the only consumer facing information he had was the shelving and the explanations. Consumer, you're about to buy the in-sink orator or this one. Oh, Jonica's is a lot less expensive, but look, it's got the same grinding power. It's that it says the same horsepower. Right. Which does not say that that's the grinding power. But that's the necessary by implication logic of Ninth Circuit case law. That is, Your Honor, but there's another, but there's another alternative explanation, which is that it's the input power used for it. Okay. And that this. And therefore ambiguity and therefore it couldn't be literally untrue. That's exactly right, Your Honor. And there's, and there's no evidence here as to how consumers understand the horsepower number. Well, why can't one infer from how the Lowe's and Home Depot are presenting it to consumers? Well, so the Lowe's and Home Depot are not saying this is the output power of, that the horsepower number is determined based on an output basis. Okay. I thought in the red brief. That's said by Ferguson once and Ferguson, in fact, does not sell Jonica disposers. But these are statements made to consumers. We don't have any understanding of what consumers understand from those statements as well. Certainly horsepower is a factor in consumers' purchases, but the way that it's determined is not ever explained to consumers by either, by any member of the industry. Instead, it's used as a proxy to say, here's the approximate light, medium, heavy duty that you could use for this product. Incorator. How do you say it? Incorator. Incorator was the original company in this field. That's correct, Your Honor. About a hundred years ago. And they were using horsepower in this fashion as output. Yes, apparently so. So if your client, Jonica, came in and starts using horsepower, and it had like 70% of the market or something. So in terms of what people looking at the market would think, they would think it was output because that's what it had always been. Now, Jonica comes in and starts using it for some, some completely, some completely different meaning. And presumably that was an intentional confusion, was it not? Well, no, Your Honor, because the Jonica motor is an entirely different model. It's a permanent motor. Well, that may be, but it didn't say that. It didn't say this is input horsepower, not output horsepower. It did not, and neither did Incorator say this is output horsepower. But all the preliminary injunctions asking you to do is clarify what you don't disagree with, correct? In other words, your whole position is this data is relevant for input power and buyers want it. And that's what the district court has said you have to just clarify. That's right. That's what, that's what it requires us to say, is that indeed it is. And that's what you think you were always saying. That's exactly right. And there's no showing of what consumers ever thought either of us were saying. So what's the problem with being more specific and clear? So the, well, there's not any problem, but we weren't required to do that. And, and certainly not on a preliminary injunction basis, because there's ambiguity here about what do consumers understand from it. Consumers don't necessarily understand, in the garbage disposal industry, there are two ways of doing this. In the blender industry, there's one way, which is input. In the, in the light bulb industry, there's one way, which is input. In the garbage disposal industry, which is very similar to a blender, it's some do input, some do output. I guess I'm still stuck on Judge Berzon's analogy to an engine like a motorboat engine. You're buying the motorboat engine because of output thrust and it, no one's considering what the gas being put in the engine is concerned about. Well, no, you might, you might be concerned about that as well, but you may be concerned about the rating of it to determine is this a high, medium, or low load? Will this take me, what speed will I go? No, but the speed is the output thrust. Everyone wants that. It may correspond to the horsepower, but it doesn't necessarily. And in fact, the record has a variety of information that shows that our grinding rate is better, that the Jonica products perform better on things that consumers care about, which is not just the power. In fact, we think that the AC motors that Insyncrator uses have to be overpowered in order to achieve the same performance. But no one is stopping you from saying that. The question is why you're, whether this horsepower designation is false, not whether you couldn't come in and say ours, despite the fact that we have less output horsepower, works better actually. Right, you're right, but the question is whether, whether it was literally false by necessary implication, whether consumers had to understand it that way and not the way that we intended it, which is, this is input horsepower, which is the way for blenders. Wasn't there a reference in the record to the fact that there was some consumer study and you say, well, that's not usable because it's hearsay, but there was a reference to it. Well, this refers to the materiality standard, Your Honor. So besides literal falsity, the second issue in the case is, was this deception material? But does it only refer to materiality, or does it also refer to what people understood? So the study that was summarized by an Insyncrator employee, not provided, but just summarized, said that horsepower is an important consideration for consumers. We don't disagree with that. It doesn't say what horsepower, it doesn't say input or output. You're essentially saying it shouldn't be an important consideration. You're saying it shouldn't be any consideration. It should be only a question of how it actually operates. Well, that, that it, right, that it may, it may or may not relate to the consumer performance things that consumers care about ultimately. Well, they care about it presumably because they think it's the key determinant in how the thing operates. Well, we don't, there's no evidence of that in the record. Well, why else wouldn't they care? What we, what we have is on the materiality standard, we have evidence that consumers consider horsepower, but we don't have evidence that the deception that's alleged here is actually material to consumers. And if I can move to the materiality point, this is another place where we think the District Court made a legal error, which is to short circuit the analysis of materiality. Materiality is whether the deception at issue has a likelihood of changing consumer behavior in purchasing behavior ultimately. And the judge decided that this, that because horsepower is an inherent characteristic or quality of, of, of... Well, that's one thing it said, but it said more than that. Pardon? The District Court said that, but... Yes. Sort of in passing, it said more than that. Well, but so the, but the question here is the deception that's alleged is that it's 14 to 39 percent deficient, the horsepower ratings that Jonica has provided. But there's nothing in the record that says that that affects performance of the ultimate garbage disposer or that consumers would care about that particular issue. Is your position, well, it's multi-leveled on this point, correct? You're, you're saying you can't really do judicial notice as to materiality, but, but I sort of agree with Judge Berzon that the District Court was careful to point to not direct evidence, but inferential evidence that consumers could care. And I come back to the shelving and the positioning of these items. So we don't doubt that horsepower is a factor in consumer decisions. But it's capable of influencing. Horsepower is capable, but it's the deception here, but it's the deception here, which is the difference between input and output horsepower. Right. There's no evidence that this is capable of influencing consumers' purchasing decisions. So let's take the example here. They say 14 to 39 percent. Let's say it was 1 percent. Would the court have found that that is material just because horsepower is an inherent characteristic or quality of the motor? No. We think that 1 percent is obviously not going to be material to consumers ultimately. And it may be made up by other factors in the Jonica model. In fact, we think the 14 to 39 percent is definitely made up by other factors in the Jonica model. So the court can't just look at the inherent characteristic of quality and say horsepower is a product. But what the district court said about this is nevertheless, even assuming that the horsepower is not an inherent part of the product, it finds that it would likely show false evidence. It didn't rely on the inherent. It's not at all clear what it's relying on. I'm sorry? It's not at all clear what the court is relying on. Well, then it goes on, but both in your briefs and now you're saying that that's what you're relying on, but it's not what you're relying on. Well, but the fact is there was no evidence that the 14 to 39 percent difference matters to consumers such that they would change their- Counselor, you're into your rebuttal time that you wanted to reserve. Is there anything else you want to say on the third issue? And I'll give you two minutes on rebuttal. Thank you, Your Honor. Just very briefly on the irreparable injury issue. So here, this is an issue where we agree that the judge below made a clear error of law. He applied the wrong standard. He applied outdated case law concerning trademark cases. This is not a trademark case. Now, Insinkerator says that was harmless error because, if anything, the presumption was applied in our favor rather than not. But it's quite clear from even recent decisions of this court that the harmless error doctrine does not apply when you're looking at an abuse of discretion standard where there's a clear misstatement of the law on which the court relied. And the case I would use for that is NRA Apple Inc. device performance litigation. And what you're arguing is that even though there actually is now a statutory rebuttal, a statutory presumption, we should hold that mistake in your favor. That's right, Your Honor, because even under the abuse of discretion standard, it needs to be sent back to the district judge to actually apply his discretion using the proper legal standard. Okay. Thank you. Good morning, Your Honors. May it please the court, Michael Gervais on behalf of the NRA, I'm here to ask a question about the way in which garbage disposers are organized on shelves. It's how they are sorted online. It's how consumers search for and decide to purchase. And what consumers, builders, and retailers all believe is that we're using the same metric. The reason for that is because everyone refers to horsepower in the same way, the output of the motor, everyone that is except for Jonica. Well, now, he said an oral argument. It may be my recollection. He said that there's record evidence that blenders actually highlight the input horsepower, not the output horsepower. What he's referring to in the record is another UL standard, and that is also a safety standard. I don't believe that the record evidence reflects that it's used for advertising purposes. For UL 430, is there an explicit disclaimer that the safety is not aimed at advertising for consumer purchase? That's correct. Well, what it says is it expressly disclaims that it uses input current rating regardless of what's on the package or what's in your records. It doesn't say regardless of the output. I'm sorry? It doesn't say regardless that this isn't. It says regardless of what's on the package. All right, but it doesn't say that this is not a measure of efficiency. You say it's clear from the context that it doesn't. It isn't, but it doesn't say that. What is also in the record is an email from the United Laboratories engineer confirming that this is not to be used for advertising purposes. But that's a different point, too. He doesn't say that it's not to be used as a measure of efficiency. In other words, your argument, as I understand it, is that the UL 430, if that's what it is, is a measure of safety input, i.e., you're not going to blow up the electrical system. Correct. And not a measure of the efficiency of the waste disposer. Right. Neither of these, neither in the standard itself or in the email does, is that refuted? Was that accepted? The point is, is that it's not to be used for advertising the horsepower of the motor. It's for a different purpose. It's to make sure that they... If they advertise this is input horsepower, that would be fine, right? It depends on the message that's ultimately being conveyed. Under the Lanham Act, you have to look at the message in context. For someone to UL 430, this is input horsepower. That could potentially override what consumers understand. But for example... So the notion that it isn't to be used for advertising is really beside the point. Your Honor, I think what I'm trying to explain is that when there's a universal understanding of a particular metric, what the advertising, if it's going to use a different metric, it will need to explain that it's using a different metric. What is there in the record or what does there have to be in the record that goes to consumer understanding as opposed to expert understanding? At this stage? Yes. Your Honor, I believe that what we have in the record is sufficient. You don't... For a literally false statement... But what is it that doesn't... Insofar as the information in the record deals with what experts or engineers think, is it relevant? Yes, that is relevant.  Because what the experts and the engineers are... So for example, what the expert puts into the record are examples of both consumer-facing and non-consumer-facing... I'm not talking about those experts. I'm talking about experts on these machines. A lot of what's in the record is about what people who know these machines on a professional basis understand.  So the experts say consumer-facing, but what's their evidence? There's a number of sources of evidence for consumer-facing from retailer websites, for example, from build.com, Lowe's, Home Depot, Wayfair, all of which refer to garbage disposal, horsepower in the context of the motor output. So for example, build.com, the total power output capability from the included motor measured in horsepower. Lowe's, garbage disposal motors come in varying horsepower ratings. Again, referring to the motor. Home Depot, garbage disposals come in different sizes and with different features. Motor sizes vary from one-third horsepower to one horsepower. All of these consumer... Are these the illustrations in pages 9 to 10 of your brief? I believe so, yes. It's at pages 355, 359, 368 of the... One thing that's just stepping back that would help me would be to understand the world of untrue by necessary implication as distinct from a misleading claim that you don't have here. So what's the limiting principle that means that they can't allege, oh, it's untrue by necessary implication and thereby avoid the slight more stringency that comes as to misleading? I believe what the cases indicate is that you look at it in context and if the message that is being unambiguously conveyed is false, that the message that's being received by the consumer is false, then it can be false by necessary implication. There may be examples where the message could potentially be false or misleading and that would then fall into the misleading camp. But in this case... Just because from a common sense standpoint, if they're putting their things right next to your clients... And they're using a sort of scientifically accurate number, that sounds like misleading more than literally false. I don't think so, Your Honor. I think what the message that's being conveyed to the consumer is that there's an apples-to-apples comparison. So they are an equivalent horsepower. So it'd be unreasonable and implausible for any consumer to think that actually that number refers to input power. That's the thing. Yes, that is... They are referring to... The only source that they have cited to is a single electrical safety standard more precisely. It's that it would be unreasonable for any consumer to think that it wasn't the same as what the incinerator one is reporting. I'm sorry, Your Honor. I didn't hear the first... What you seem to be saying is that what would be unreasonable is for any... Or what no consumer would think is that the number on the Genenko company waste disposals is a different number than the one in the incinerator. The incinerator was there long before. And they, as you said, they at least would think that it was the same thing, whatever it is. That's right. It's equivalent. And we have a number of non-consumer facing resources that are industry standards on how to measure the horsepower in a motor. That's introduced through our expert, Dr. Eisenstadt, from the IEEE, from NEMA. All of them refer to measuring horsepower in a context of measuring the output of the motor. It would have been pretty simple to find some consumer, direct consumer evidence that they were deceived. But you didn't. It doesn't exist in this record, correct? It's all by inference. It is by inference, Your Honor. I mean, again, this is a preliminary injunction. It's the stage that we're at. Consumer surveys are not required at this stage. However, what we do have is, from the Eubanks Declaration, talking about consumer surveys that talk, that explain that one of the primary attributes that consumers care about is horsepower. And now they say, well, consumers shouldn't care about that. They should care about performance. Those aren't the words that they used in their marketing. They said that their horsepower is the same as our horsepower. They're sitting side by side next to our disposers. And it's just not true. Their horsepower doesn't measure. Could we affirm on materiality just because the motor's inherent quality is the output power? Or are you not asking us to do that and you're pointing to? You can, yes. Inherent quality or characteristic is a presumption that is afforded. However, what the lower court said is that even putting that aside, there is evidence that this is material. And it points to, for example, the Eubanks Declaration that talks about these consumer surveys. That's not only important to consumers, but important to retailers. That retailers also care about the horsepower. And retailers would not, they would not be able to compete for the white label contracts if retailers understood that they don't offer a full line of disposers. They don't have a true one horsepower or one and a quarter horsepower disposal. How is the fact that Lowe's and Home Depot are organized and advertised by horsepower prove what horsepower they were talking about? What they were talking about in those ads is motor output. Not the ads. I'm talking about the materiality of discussion in the district court opinion. As demonstrating that it's horsepower that matters. Well, I suppose, John, I could say, yes, it's horsepower that matters. Although their actual argument is not horsepower that matters. But that we still don't know when they're organizing it by horsepower, they're putting the Geneco ones in with the insincorator ones as if they were apples and apples. Right. So how does the fact that they're organizing them by horsepower demonstrate materiality? It demonstrates that people care about horsepower, but how does it prove what horsepower they care about? The consumers aren't getting the product capability that they are expecting, that they're thinking that they're buying. So when they are buying a one horsepower Jonica disposer, it's not actually one horsepower. And that's the issue. I'm just having trouble understanding how the way the retail stores organize by horsepower demonstrates that. Demonstrates materiality. It's material because they wouldn't be afforded that shelf space. That that Jonica would not be able to compete in a head to head with our disposers because they don't truly offer a one or one and a quarter horsepower disposer. They're taking up shelf space that they shouldn't get. They're not competing on a level playing field. And that's why it's material. And again, as I was explaining earlier, they wouldn't even be able to compete for white label contracts. This is where they manufacture the product for, let's say, Home Depot or another retailer. They wouldn't be able to compete for those contracts that put disposers in thousands of stores if retailers understood that these were not truly one or one and a quarter disposers. If you are, if you prevail in these first two issues, are you, do you have any opposition to a remand for the district court in the first instance to apply the statutory presumption? Or do you think that here the gap filling occurred in the materiality analysis? Your Honor, I don't think it's necessary to remand. You know, I believe that this court can apply that presumption and there's sufficient evidence in this record to suggest that there is an irreparable injury. And what's the irrefutable evidence that shows that? So, for example, the district judge credited our evidence that we had lost a prior contract with a retailer. And that's judgment, not clear error. And in addition, that we were likely to show that there is going to be harm in the future because we are actively competing with Jonica for these. But if we were applying our abuttable presumption, we would have to know what evidence there was on the other side and then it wouldn't be sufficient to convince the district court otherwise. And you're saying that since she was convinced without the presumption, she would certainly be convinced with the presumption. That's basically what you're saying. The district court gave them the benefit of the presumption when it should have given us the benefit of the presumption. That's harmless error. But even in the absence of the presumption, the court still found irreparable injury. And so I don't believe that it's necessary to remand to the district court to rehash its findings on irreparable injury. And so I don't believe that, at the end of it, that's necessary at this stage. Unless the court has any other questions, I'm happy to submit on the record. Thank you. I just have three points to make. First is the, to Judge Higginson's comment about, isn't this more of misleading case as opposed to literal falsity case? We couldn't agree more with that. That the question here is not whether consumers have only one way of understanding it. In fact, we don't think consumers have just one way of understanding what a horsepower number is divorced of any further context on the label. And therefore, the literal falsity finding, which, by the way, is quite rare, and which other circuits have stated should be quite rare, only used for egregious, bald-faced lies, etc. We know that the consumers were being told by the retailers that garbage disposal, horsepower determines what the disposal is capable of grinding. The higher the horsepower, the better the disposal will run. Food waste will be ground to finer particles. You'll have fewer jams, etc. Isn't that all directed at output? It's not necessarily, Your Honor, because it's not necessarily directed at output. And it doesn't say to consumers, horsepower is measured on an output basis by disassembling the motor and running it on a dynamometer. What it does say, and we agree with this, is that directionally, higher horsepower gives you better performance, better grinding capacity, which is exactly what Jonica agrees with. That was what Ferguson said, the total power output capability from the included motor measured in horsepower. Well, and so that, I believe, is a statement from the Ferguson website, which is one retailer that refers to output power capability. And that is at the record at 3. But your position is that the horsepower number doesn't determine what the disposal is capable of grinding. That your system is a different kind of system, and despite the lower output, it still has equivalent grinding ability. So you seem to be saying the horsepower is really not relevant to that. It doesn't matter. It correlates with grinding capability, which is what the retailers are saying. But it doesn't have to be measured only on an output basis. And that's not necessarily the consumer's understanding of what the horsepower rating means. The organization in the store is essentially, this is a light duty, this is a medium duty, this is a heavy duty garbage disposal. And there's a lot of evidence in the record that shows that the Jonica disposers actually perform better. But aren't those organizational decisions based on the assumption that we're comparing apples and apples? But it may not be apples and apples of horsepower, Your Honor. It's apples and apples of grinding speed. Well, no, but they're putting it under the number of horsepower. I mean, they're using the horsepower, and they are representing that this is the same horsepower measure. Not necessarily. They're representing that these are comparable products. Then why are they putting the horsepower numbers and not simply, whether it's higher or medium grinding ability? That's not what they're saying. They're saying this is one horsepower. And actually, your product is not one horsepower of output, even if, as you say, it operates equivalently. Right, Your Honor. But again, there's nothing here about what the consumers understand from it. Well, they're being told this in any event by the retailers. They're being told they're equivalent, and in fact, they're not. But the retailers seem very happy with the Jonica three-quarter horsepower being next to the Insinkerator three-quarter horsepower. Is there any evidence the retailers know or knew before this that those numbers were not the same number? There's no evidence they do not know. And certainly, they're in the business here and could be told exactly how it's determined. They certainly know that. And you could tell them, and that would be fine. But you're very resistant to doing it. No, I understand, Your Honor. But the question is whether we're forced to do that by the literal falsity doctrine. The question is why you're resisting doing it. If you're not trying, you don't think it's untrue in some sense. Yes, but we have done it in correspondence with the court's order. Below, we don't think we should have been forced to do that and to incur the expense of doing that on the rush basis that we were forced to do it on. There are clearly two different ways of looking at horsepower in the industry. There are all the competitors of Insinkerator who do it the way Jonica does it, and then there's the way that Insinkerator does it. Retailers may or may not know about this. Consumers have not. There's no evidence as to what consumers think about it. And it's not necessarily implied that it's the same way. We understand your argument. Thank you, counsel. You're on time unless any of my colleagues have any other further questions. Okay. Thank you, counsel, all for your helpful arguments today. I believe we are, all the cases are submitted for today and we are in adjournment. Thank you. All rise. The court for this session stands adjourned.
judges: BERZON, Higginson, SUNG